727 F.2d 324
 10 Collier Bankr.Cas.2d 94, 11 Bankr.Ct.Dec. 1250,
Bankr. L. Rep. P 69,763
 Harold J. HAWKINS and Eugenia B. Hawkins, Appellants,
v.
LANDMARK FINANCE COMPANY, Appellee.
In re Harold J. HAWKINS and Eugenia B. Hawkins, Debtors.
 No. 83-1497.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 8, 1983.
Decided Feb. 7, 1984.
 
 James C. Sarratt, Greenville, S.C. (William T. Clarke, Greenville, S.C., on brief) for appellants.
 Lawrence W. Johnson, Jr., Columbia, S.C. (James M. Brailsford, III, Robinson, McFadden, Moore, Pope, Williams, Taylor & Brailsford, P.A., Columbia, S.C., on brief), for appellee.
 Before WINTER, Chief Judge, WIDENER, Circuit Judge, and MICHAEL,* District Judge.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 The debtors in this bankruptcy proceeding erroneously listed a debt owed Landmark Finance Company (Landmark) as unsecured when it was in fact secured. The nature of the security was such that, under state law, it could have been avoided. After the case was closed following the debtors' discharge, Landmark began proceedings to foreclose on its security, and the debtors then sought to reopen their case so as to file a lien avoidance action. From an order of the district court affirming the bankruptcy court's denial of their motion, they appeal.
 
 
 2
 We affirm.
 
 I.
 
 3
 The voluntary petition in bankruptcy under Chapter 7 was filed by Harold J. Hawkins and Eugenia B. Hawkins, both residents of South Carolina, on June 7, 1981. The petition claimed the federal exemption for their furniture, and it listed Landmark as an unsecured creditor to which they owed $3,246.58. In fact, Landmark had a nonpossessory, nonpurchase-money lien on the furniture. Landmark had notice of the erroneous listing, but it voiced no correction. During the pendency of the bankruptcy proceedings, the Hawkins filed no proceeding under 11 U.S.C. Sec. 522(f)(2)(A), which authorizes a debtor to avoid a lien, to the extent that the lien impairs an exemption to which the debtor is entitled, if the lien is a nonpossessory, nonpurchase-money security interest in household furnishings. It is unquestioned that the Hawkins might have avoided Landmark's lien, based upon the provisions of S.C.Code Ann. Sec. 15-41-200 (1982 Supp.).[1]
 
 
 4
 On September 8, 1981, the debtors were discharged and the estate closed. Thereafter Landmark instituted a "claim and delivery" action in a South Carolina state court, the purpose of which was to enforce its lien on the Hawkins' furniture. The Hawkins, on May 25, 1982, moved under 11 U.S.C. Sec. 350(b)[2] to reopen their bankruptcy case for the purpose of instituting a lien avoidance proceeding. The bankruptcy court denied their motion, and the district court affirmed the bankruptcy court's order.
 
 II.
 
 5
 Our decision in this case turns largely on the meaning to be given Sec. 350(b). The debtors contend that we should adopt a per se rule that a debtor has the right in all instances to reopen a closed case to file a post-discharge lien avoidance complaint. Some courts have so held.[3] But there is no unanimity in this regard. Other courts have held that debtors never can file post-discharge complaints.[4] A third line of authority has taken a middle ground, holding that the right to reopen a case depends upon the circumstances of the individual case and that the decision whether to reopen is committed to the court's discretion.[5]
 
 
 6
 We think that the discretionary view is the better one, and we adopt it as the rule in this circuit. The statute is phrased in permissive language, and we think that it would do violence to the statute either to say that a closed case must be reopened or that a closed case may never be reopened. We placed the same interpretation on former Bankruptcy Rule 515, the language of which was almost identical to that of Sec. 350, and we see no reason to depart from it now that the rule has been enacted as a statute. See Matter of Seats, 537 F.2d 1176, 1177 (4 Cir.1976).
 
 
 7
 Because we conclude that the reopening of a closed case is a discretionary matter, it follows that our review is limited to a determination of whether there was an abuse of discretion on the part of the bankruptcy court in refusing to reopen this case. We think that there was not. It is, of course, true that despite notice of the mistake on the part of the debtors, Landmark made no effort to correct it. But we are aware of no duty on the part of Landmark to speak. It had the right to rely on the debtors, who were represented by counsel, to assert their own rights.
 
 
 8
 Landmark argues that it would be prejudiced if the case were reopened because it would lose its security interest. We are not impressed by this argument. We do not think that Landmark can assert the denial of an accidental benefit that it obtained as a result of a mistake on the part of the debtors or their counsel as prejudice. But the fact remains that the debtors did not seek to reopen their case for over eight months and, then, not until Landmark had instituted foreclosure proceedings in a state court. While the record does not disclose the exact amount, undoubtedly Landmark incurred court costs and counsel fees in reliance on the fact that the debtors did not challenge the validity or viability of its lien. In this we find prejudice and a sufficient basis on which the bankruptcy court could properly conclude, in the exercise of its discretion, that the case should not be reopened.
 
 
 9
 Because there was therefore no abuse of discretion on the part of the bankruptcy court in declining to reopen the case, the decision of the district court sustaining the refusal is
 
 AFFIRMED.[6]
 WIDENER, Circuit Judge, dissenting:
 
 10
 I agree with all of the opinion of the court except the last sentence of the penultimate paragraph thereof, as well as the concluding paragraph of the opinion.
 
 
 11
 I do not think the incurrence of court costs and counsel fees by the lienholder, in seeking to enforce its lien, constitutes prejudice in the legal sense so as to provide a sufficient basis for the bankruptcy court to exercise its discretion in favor of not reopening the case.
 
 
 12
 I think the case boils down to, in the words of the majority opinion, "an accidental benefit that it [Landmark] obtained as a result of a mistake on the part of the debtors or their counsel." And I agree with the majority that such should not constitute prejudice sufficient to support the action of the district court.
 
 
 13
 That being true, I am of opinion it was an abuse of discretion not to reopen the case, and thus respectfully dissent.
 
 
 
 *
 Honorable James H. Michael, Jr., United States District Judge for the Western District of Virginia, sitting by designation
 
 
 [1]
 Section 15-41-200 to the extent pertinent provides:
 The following real and personal property of a debtor domiciled in this State shall be exempt from attachment, levy and sale under any mesne or final process issued by any court or bankruptcy proceeding:
 ....
 (3) The debtor's interest, not to exceed two thousand five hundred dollars in aggregate value in household furnishings [and] household goods ... that are held primarily for the personal, family or household use of the debtor or a dependent of the debtor.
 The sweep of Sec. 15-41-200 is limited by the provisions of Sec. 15-41-420 which states:
 The exemptions contained in this chapter shall not extend to an attachment, levy or sale in any mesne or final process to enforce the payment of taxes or a valid security agreement; provided, however, that in bankruptcy proceedings, provisions of the Bankruptcy Reform Act of 1978 (Public Law 95-598) shall control.
 
 
 [2]
 11 U.S.C. Sec. 350(b) provides simply that:
 A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.
 
 
 [3]
 These courts relied heavily on the purpose of the bankruptcy code, which is to allow the bankrupt a fresh start. They also noted that Congress put no time limit on lien avoidance actions and inferred that Congress thus intended that they be available even post-discharge. See, e.g., Matter of Montney, 17 B.R. 353 (Bkrtcy.E.D.Mich., S.D.1982); In re Newton, 15 B.R. 640 (Bkrtcy.W.D.N.Y.1981)
 
 
 [4]
 In prohibiting post-discharge filing, these courts cited the need for finality in bankruptcy proceedings and the creditors' need to know pre-discharge whether to seek reaffirmation agreements, which are impermissible post-discharge. See, e.g., In re Porter, 11 B.R. 578 (Bkrtcy.W.D.Okl.1981); In re Krahn, 10 B.R. 770 (Bkrtcy.E.D.Wis.1981); In re Adkins, 7 B.R. 325 (Bkrtcy.S.D.Cal.1980)
 
 
 [5]
 These courts reasoned that this approach is dictated by the bankruptcy courts' equitable nature. See, e.g., Towns v. Postal Finance Co., 16 B.R. 949 (Bkrtcy.N.D.Iowa 1982); See also Matter of Swanson, 13 B.R. 851 (Bkrtcy.D.Idaho 1981)
 
 
 [6]
 The provisions of Secs. 15-41-200 and 15-41-420 are relatively new and have not been authoritatively interpreted by the South Carolina courts. It may well be, however, that insofar as the ultimate rights of the debtors are concerned, this appeal is an academic exercise. We express no view on the matter, but debtors may be entitled to assert the exemption contained in Sec. 15-41-200 as a defense to the "claim and delivery" action presently pending in the state court